UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND A. MCGINNIS,<br><br>            Plaintiff,<br><br>      v.<br><br>B. ATKINSON,<br><br>            Defendant. | Case No.: 1:11-cv-01337 LJO JLT<br><br>FINDINGS AND RECOMMENDATIONS GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>(Doc. 23) |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendant's motion to dismiss filed March 5, 2012. (Doc. 23). Defendant argues that Plaintiff failed to exhaust his administrative remedies prior to filing this action. Plaintiff has filed an Opposition in which he asserts he submitted a grievance related to the incident at issue within five days. (Doc. 31). Despite this, inexplicably, Defendant's Reply asserts that Plaintiff failed to directly dispute the exhaustion argument and reiterates that Plaintiff failed to exhaust the available administrative remedies. (Doc. 33). For the reasons set forth below, the Court recommends the motion be **GRANTED**.

**I.     BACKGROUND**

This action is proceeding on Plaintiff's amended complaint. (Doc. 7.) The Court screened the amended complaint and found that it stated a cognizable claim against Defendant Atkinson for excessive force. (Doc. 10.) Plaintiff's amended complaint related to an incident that occurred on

1  June 14, 2011 in which Plaintiff's cellmate, inmate Harrison, refused to return his food tray and
2  proceeded to cover the cell window with paper in protest for not receiving his vegetarian food tray.
3  (Doc. 7 at 3-4). When Harrison failed to remove the paper from the window as ordered, Defendant
4  Atkinson sprayed pepper spray through the open tray slot in the cell door. (Id.) Atkinson entered the
5  cell and sprayed Plaintiff with the pepper spray as well. (Id.) Plaintiff's amended complaint
6  acknowledges that the grievance process had not been complete at the time of the filing of the
7  amended complaint. (Id. at 2).

8        On March 5, 2012, Defendant filed the instant motion to dismiss on grounds that Plaintiff
9  failed to exhaust all available administrative remedies prior to filing suit. (Doc. 23). Specifically,
10 Defendant asserts that Plaintiff had the opportunity to file an inmate grievance regarding the June 14,
11 2011 incident, but failed to do so until October 2011. Plaintiff's October 2011 grievance was
12 cancelled as untimely.

13       Plaintiff claims that he filed a grievance related to the June 14, 2011 incident on June 19, 2011.
14 (Doc. 31 at 4) Plaintiff asserts that he gave the complaint to Officer Martinez. Id. When by June 28,
15 2011, Plaintiff had not received any acknowledgement; he submitted an inmate request to the
16 Litigation Coordinator. Id. Plaintiff inquired whether his grievance had been received and expressed
17 concerns that staff may be "messing" with his appeals. (Doc. 31 at 11) He requests a meeting where
18 he could submit the appeal personally to the Litigation Coordinator. Id.

19       On July 4, 2011, Plaintiff wrote to the Office of Internal Affairs and complained about the fact
20 that he had submitted a grievance related to the June 14, 2011 event but had not received a response.
21 (Doc. 31 at 12) He requested an investigation into his grievance submission and the underlying
22 events. Id.

23       Once again, on July 10, 2012, Plaintiff submitted an inmate request related to his grievance
24 that he filed on June 19, 2011 related to the June 14, 2011 event. (Doc. 31 at 13) In response, on July
25 14, 2012, the Litigation Coordinator responded and reported that no such appeal had been received. Id.
26 In response, on July 17, 2011, Plaintiff requested a supervisor review the situation and reiterated his
27 desire to provide a copy of the grievance in person given that the prior one never arrived at the appeals
28

office. Id.  The supervisor responded on July 24, 2011 and reported again that the appeals office had not received Plaintiff's grievance. Id.

The same day, Plaintiff submitted an inmate request to which he reported that he attached a copy of his original grievance. (Doc. 31 at 14)  Again on July 24, 2011, the appeals office responded and reported that there was no copy of the grievance attached.  Id. at 15.  Plaintiff asserts that he learned on August 2, 2011 from G. Hernandez that his inmate request was received but that no appeal was attached.  (Doc. 31 at 5).  Hernandez told him also that the appeals office did receive an appeal from him on July 26, 2011 which was screened out on July 28, 2011 and returned to him with instructions on how to proceed.[1]  Id.; Doc. 23-6 at 2; Doc. 23-7 at 2.  The instructions required Plaintiff to remove extraneous pages and to attach the incident report outlining what occurred.  (Doc. 23-3 at 10)

Plaintiff claims that he never received these responses so on August 4, 2011, he again requested a supervisor review and an in-person interview because of his concern that "I've turned in 2 complaints which both has come up missing."  (Doc. 31 at 14)  On August 9, 2011, the supervisor responded and reiterated that no appeal had been received and "suggest you re-write and re-submit." Id.

On October 3, 2011, Plaintiff filed an appeal related to the June 14, 2011 event.  (Doc. 31 at 25)  On October 6, 2011, at the first level of review, Plaintiff's appeal was rejected because it was not signed or dated and because it was not timely.  Id. at 26.  On October 12, 2011, Plaintiff re-submitted the grievance and it was reviewed at the second level.  (Doc. 23-2 at 5)  It was cancelled because it was not timely. Id.; Doc. 31 at 27.  Plaintiff did not appeal the cancellation of the grievance.[2]

///
///
///

---

[1] The Court surmises that the inmate request and the appeal became separated in transit so that the appeal arrived a day or so after the inmate appeal.
[2] On October 31, 2012, Plaintiff submitted a grievance related to Tallerico's handling of his grievances related to the June 14, 2011 event.  (Doc. 31 at 7)

3

## II.     DISCUSSION

### A.     Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are thus required to exhaust all available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211 (2007). Exhaustion of administrative remedies is mandatory regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and applies to all prisoner suits relating to prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002). If the Court concludes that the prisoner has failed to exhaust his administrative remedies, the proper remedy is dismissal without prejudice. Wyatt v. Terhune, 315 F.3d 1108, 1119-1120 (9th Cir. 2003).

The goals of the PLRA's exhaustion requirement are to: (1) "eliminate unwarranted federal court interference with the administration of prisons;" (2) "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case;" and, (3) "reduce the quantity and improve the quality of prisoner suits." Woodford v. Ngo, 548 U.S. 81, 84-85 (2006). Therefore, "the PLRA exhaustion requirement requires full and proper exhaustion." Id. at 92-94.

The grievance and appeal procedure for inmates in the custody of the California Department of Corrections and Rehabilitation is a four-step process. Vaden v. Summerhill, 449 F.3d 1047, 1048-1049 (9th Cir. 2006); Cal. Code Regs. tit. 15, §§ 3084.1-3084.6. Generally, the inmate is required to file an informal inmate appeal within 15 days of the incident. Brown v. Valoff, 422 F.3d 926, 929-930 (9th Cir. Cal. 2005). If denied at this First Level, the inmate can appeal to the Second Level which, generally, is to the warden or the warden's designee. Id. The Third Level Appeal is conducted by the CDCR's Director or designee. Id.

Importantly,"[t]he requirements of the prison's grievance process, not the PLRA, define the boundaries of proper exhaustion" (Jones v. Bock, 549 U.S. 199, 218 (2007)), and it is only a final decision on the merits from the Third Level Appeal which satisfies the exhaustion requirement under

1  the PLRA. Cal. Code Regs., tit 15, § 3084.7(d)(3) (2011); Brodheim v. Cry, 584 F.3d 1262, 1265 (9th
2  Cir. 2009).  An appeal can be "cancelled" in several circumstances, including when it is not timely
3  presented. Cal. Code Regs., tit 15, § 3084.6(c)(4) (2011).  When this occurs, the regulations set forth
4  the procedure for challenging this cancellation decision.  Cal. Code Regs., tit 15, § 3084.7(c)(1)
5  (2011).
6        The exhaustion requirement is not jurisdictional, but rather creates an affirmative defense that a
7  defendant may raise in an unenumerated Rule 12(b) motion.  Wyatt v. Terhune, 315 F.3d 1108, 1117-
8  19 (9th Cir. 2003).  The defendant bears the burden of raising and proving the absence of exhaustion.
9  Id. at 1119.  In deciding the motion, "the court may look beyond the pleadings and decide disputed
10 issues of fact."  Id.  If the court concludes that the prisoner has not exhausted all of his available
11 administrative remedies, "the proper remedy is dismissal of the claim without prejudice."  Id. at 1120.
12 If a complaint contains exhausted and unexhausted claims, "the court proceeds with the good and
13 leaves the bad." Jones, 549 U.S. at 221.

14       **B.**    **<u>Analysis</u>**

15       From the evidence presented, it appears that Plaintiff attempted to submit a grievance related to
16 the June 14, 2011 event.  However, it appears also that this initial grievance did not make it to the
17 appeals office.  The grievance that *was* received, arrived on July 26, 2011 but it was returned to
18 Plaintiff with an instruction as to the corrections that were needed.  (Doc. 23-3 at 10) These
19 instructions included the advisal that read, "Be advised that you cannot appeal a rejected appeal, but
20 should take the corrective action necessary and resubmit the appeal **within the timeframes specified**
21 in CCR 3084.6(a) and CCR 3084.8(b)." (Doc. 31 at 26, emphasis added.)  Notably, Officer Hernandez
22 spoke with Plaintiff on August 2, 2011 and reiterated the information set forth in the written notice
23 rejecting the appeal for corrections.  (Doc. 23-2 at 3-4)
24       As late as August 9, 2011, the appeals office encouraged Plaintiff to provide the corrected
25 appeal. (Doc. 31 at 14)  Nevertheless, Plaintiff failed to do this until, on October 3, 2011 which was
26 more than 60 days after his grievance was returned to him on July 28, 2011 and the August 2, 2011
27 face-to-face notification provided by Officer Hernandez, and nearly 60 days after the August 9, 2011
28 suggestion that he re-submit his corrected appeal.  (Doc. 31 at 25)  Thus, when Plaintiff finally

1  submitted his corrected grievance, it was untimely and, importantly, submitted *after* he filed the
2  current litigation.  (Docs. 1, 7)  As a result, his appeal was cancelled and he was informed about his
3  right to appeal the cancellation.  (Doc. 31 at 27)  This advisal read,

> Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted.  However, **a separate appeal can be filed on the cancellation decision**.  The original appeal may only be resubmitted if the appeal on the cancellation is granted.

7  Id. emphasis added.  Despite this, Plaintiff failed to appeal the cancellation.

8  Defendant contends that Plaintiff failed to exhaust his administrative remedies because Plaintiff failed to timely complete the inmate appeals process despite several opportunities to do so. Notably, the PLRA only requires an inmate to exhaust administrative remedies that "are available." 42 U.S.C. § 1997e(a).  When circumstances render administrative remedies "effectively unavailable" an inmate is excused from the exhaustion requirement.  *See* Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010) (Warden's mistake rendered administrative remedies unavailable, thereby excusing inmate from his failure to exhaust).  *See also* Macias v. Zenk, 495 F.3d 37, 45 (2d Cir. 2007) (threats by prison officials may render administrative remedies unavailable); Kaba v. Stepp, 458 F.3d 678, 686 (7th Cir. 2006) (same); Brown v. Croak, 312 F.3d 109, 112 (3d Cir. 2002) (administrative remedies unavailable where prison officials erroneously told the inmate he must wait until an investigation was complete).  Accordingly, the Court must determine whether the improper screening of Plaintiff's appeals rendered administrative remedies "effectively unavailable" so as to excuse Plaintiff from his otherwise apparent failure to exhaust.

21            1.   Improper Screening and Other Exceptions to Exhaustion

22  The Ninth Circuit has held that "if prison officials screen out an inmate's appeals for improper reasons, the inmate cannot pursue the necessary sequence of appeals."  Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010).  In that situation, administrative remedies are "'effectively unavailable' such that exhaustion is not required under the PLRA."  (Id.)  To fall within this exception, the inmate must show that he attempted to exhaust his administrative remedies but was thwarted by improper screening.  (Id.)  In particular, the inmate must establish that (1) he actually filed a grievance that, if pursued through all the levels of the appeals process, would have sufficed to exhaust the claims he

now seeks to pursue; and (2) prison officials screened his grievance for reasons inconsistent with or unsupported by applicable regulations.  (Id. at 823-24).

Other Circuit Courts have also addressed the issue of the effect of prison officials' failure to respond to grievances in a timely manner, and held that exhaustion occurs when prison officials fail to respond to a grievance within the policy time limits. *See* Vlasich v. Reynoso (E.D. Cal., Dec. 20, 2006) 2006 WL 3762055 report and recommendation adopted, (E.D. Cal., Feb. 15, 2007) 2007 WL 521378 (citing Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir.2004) (administrative remedies are exhausted when prison officials fail to timely respond to properly filed grievance); Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir.2002) (the failure to respond to a grievance within the policy time limits renders remedy unavailable); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir.2002) (when prison officials fail to respond, the remedy becomes unavailable, and exhaustion occurs); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir.2001) (district court did not err when it declined to dismiss claim for failure to exhaust where prison failed to respond to grievance); Powe v. Ennis, 177 F.3d 393, 394 (5th Cir.1999) (when a valid grievance has been filed and the state's time for responding has expired, the remedies are deemed exhausted); Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir.1998) (when time limit for prison's response has expired, the remedies are exhausted); *see also* Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir.2003) (recognizing that a remedy prison officials prevent a prisoner from utilizing is not an available remedy); Brown v. Croak, 312 F.3d 109, 113 (3d Cir.2002) (formal grievance procedure not available where prison officials told prisoner to wait for termination of investigation before filing formal grievance and then never informed prisoner of termination of investigation); Miller v. Norris, 247 F.3d 736, 740 (8th Cir.2001) (a remedy prison officials prevent a prisoner from utilizing is not an available remedy).

Here, the Court finds Defendant has presented sufficient evidence that Plaintiff did not exhaust his administrative remedies related to the June 14, 2011 incident.  Though the failure of Plaintiff's June 19, 2011 grievance to arrive at the appeals office is inexplicable, the copy of the grievance that *was* received by the appeals office and returned on July 28, 2011 failed to meet the submission requirements and was rejected with instruction as to how to correct it. Doc. 23-6 at 2; Doc. 23-7 at 2. Consequently, a reasonable inference is that the original filing was similarly defective and Plaintiff

does not claim otherwise. Plaintiff was given the opportunity to take corrective action and re-submit his claim. (Doc. 23-2 at 4; Doc. 23-3 at 7; Doc. 31 at 14). Therefore, Plaintiff's case is distinguishable from those cases cited above where courts have found the failure to respond to a grievance constituted exhaustion under the PLRA or where the screening of the appeal was improper. (See <u>Vlasich v. Reynoso</u> (E.D. Cal., Dec. 20, 2006) 2006 WL 3762055 *3-4)

Nevertheless, Plaintiff fails to explain why he waited until October 3, 2011 to submit the corrected appeal. (Doc. 31 at 25) This was not a situation in which the appeals coordinator foreclosed the possibility of Plaintiff taking any further action regarding the appeal. (Doc. 31 at 14) Rather than take advantage of the opportunity, Plaintiff waited nearly 60 days to resubmit his appeal. (Doc. 23-2 at 4-59; Doc. 31 at 6; Doc. 31 at 25). Given that approximately 90 days had passed since the original deadline of July 15, 2011 and approximately 60 days had passed since Plaintiff had been advised to re-file his appeal, Plaintiff's October 3, 2011 appeal (resubmitted October 10, 2011) was cancelled as untimely. Then, when this occurred, Plaintiff failed to appeal the cancellation decision.

Based upon the information alleged, the Court does not find that the CDCR has "created draconian procedural requirements that would 'trip[ ] up all but the most skillful prisoners'" and render administrative remedies effectively unavailable, so as to excuse a failure to exhaust. See <u>Sapp v. Kimbrell</u>, 623 F.3d 813, 827, citing <u>Woodford,</u> 548 U.S. at 102. Plaintiff was advised of his obligation to make the corrections to his appeal in a timely fashion and was advised of his right to appeal the cancellation decision. Despite this, he failed to make the corrections in a timely fashion and failed to appeal the cancellation decision. This is insufficient to satisfy the PLRA. <u>Woodford,</u> 548 U.S. at 83-84 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.")

Finally, the Court notes that Plaintiff filed the instant litigation before completing the grievance process and did so at a time when he was still actively pursuing these remedies. Thus, even *had* Plaintiff continued to pursue his administrative remedies, his decision to file this litigation while those actions were pending, in essence, eliminated any possibility of this Court providing substantive relief

in this litigation. McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir.2002) (exhaustion during the pendency of the litigation will not save an action from dismissal).

### III.  CONCLUSION

For all the reasons set forth above, it is **HEREBY RECOMMENDED** that Defendants' motion to dismiss for Plaintiff's failure to exhaust be **GRANTED**.

These findings and recommendations are submitted to the United States District Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **June 22, 2012**                **/s/ Jennifer L. Thurston**
                                                              UNITED STATES MAGISTRATE JUDGE

9